IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAI CHANG,<br><br>                Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                Defendant.<br>_____ | Case No.: 1:10-cv-01097 JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF MAI CHANG |

Mai Chang ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act, and seeks review of the decision denying her claim. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the medical opinion of an examining physician. For the reasons set forth below, the Plaintiff's social security appeal is **DENIED**.

## **PROCEDURAL HISTORY**[1]

Plaintiff filed her application for supplemental security income on April 18, 2005, alleging disability beginning March 1, 1992. *See* AR at 19, 77. The Social Security Administration denied her claim on October 25, 2005, and upon reconsideration denied the claim again on April 19, 2006. *Id.* at 19. After requesting a hearing, Plaintiff testified before an ALJ on July 2, 2007. *Id.* at 47.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

The ALJ determined Plaintiff was not disabled, and issued an order denying benefits on July 19, 2007. AR at 19-25. Plaintiff requested review of the ALJ's decision by the Appeals Council of Social Security, which was denied on May 13, 2010. *Id.* at 4-6. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under Title XVI of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered disabled only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990); *see also* 20 C.F.R. § 404.1512 ("In general, you have

to prove to us that you are blind or disabled."). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a)-(f) (2010). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity[2] to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

A.   Relevant Medical Evidence[3]

Dr. Greg Hirokawa conducted a comprehensive psychiatric evaluation on July 24, 2005. AR at 140-44. Plaintiff complained of "feeling depressed, poor appetite, poor sleep, crying, suicidal ideation, and fatigue." *Id.* at 140. Also, Plaintiff reported having high blood pressure, hepatitis, and back pain. *Id.* at 141. Dr. Hirokawa noted Plaintiff's "[b]ehavior was cooperative but withdrawn throughout the entire interview [and her] attitude was pessimistic." *Id.* Similarly, Plaintiff's "facial expression was sad" and her "mood was depressed." *Id.* Dr. Hirokawa found Plaintiff's intellectual functioning and sensorium was below average, and attributed deficiencies of knowledge to her lack of education and cultural background. *Id.* at 142. Plaintiff was able to perform simple two-step

---

[2] The residual functional capacity is a determination of what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[3] Plaintiff received treatment from Kings Winery Medical Clinic beginning in January 2005, where she was treated for physical issues, such as headaches and abdominal pain. *See, e.g.,* AR at 130. However, the treatment notes from Kings Winery are omitted because Plaintiff's request for review is limited to the assessment of her mental abilities, and no treating physician from Kings Winery offered an opinion regarding her mental residual functional capacity.

3

commands, and her concentration was adequate. *Id.* Dr. Hirokawa opined Plaintiff had a major depressive disorder, and gave her a GAF score of 50.[4] *Id.* at 143.

In addition, Dr. Hirokawa opined Plaintiff appeared depressed, and her symptoms were "within the moderate range." AR at 143. Dr. Hirokawa determined Plaintiff had a fair ability to understand and remember short and simple instructions; accept instructions from a supervisor who "was understanding of cultural differences;" sustain an ordinary routine without special supervision; and to interact with coworkers. *Id.* On the other hand, Plaintiff's ability to remember and carry out detailed instructions was poor, as was her ability to maintain attention and concentration "based upon her depression." *Id.* Likewise, Plaintiff's "ability to complete a normal workday/workweek without interruption at a consistent pace is poor based upon her depressive symptoms, fatigue, and poor motivation." *Id.* Finally, Dr. Hirokawa believed the likelihood of Plaintiff "emotionally deteriorating in a work environment" was high. *Id.* at 144. Thus, Dr. Hirokawa believed Plaintiff would "probably require ongoing counseling and a psychiatric medication evaluation for symptoms of depression." *Id.*

On August 25, 2005, Dr. Paul Casner conducted a consultative internal medicine examination. AR at 145-49. Plaintiff reported having "[p]ain in the stomach to the low back" and depression." *Id.* Dr. Casner found Plaintiff was "well-oriented, with flat affect, sad mood, and poor eye contact." *Id.* at 146. Plaintiff had motor strength of a "4/5" in her "grips, arms, and legs, with apparently suboptimal effort." *Id.* at 148. Dr. Casner diagnosed Plaintiff with the following impairments:

> 1. Depression related to the loss of her youngest child, complicated by fatigue and unavailability of counseling.
>
> 2. Pain in the low back and abdomen, both possibly related to postoperative complications from Cesarian, possibly mechanical low back pain and abdominal pain related to hepatitis or gastritis.

---

[4] Global Assessment of Functioning "(GAF)" scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

4

*Id.* at 148. Dr. Casner opined Plaintiff could stand and walk for six hours; sit without restriction; lift and carry 10 pounds frequently and 20 pounds occasionally; and had no manipulative limitations to gripping, handling, or reaching. *Id.* Plaintiff's postural limitations, due to the pain in her abdomen and low back, included occasional bending, stooping, squatting, and kneeling. *Id.*

Dr. Archimedes Garcia reviewed Plaintiff's record and offered a mental residual functional capacity assessment regarding Plaintiff's depression. AR at 150-52. Dr. Garcia determined Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions. *Id.* at 150. Plaintiff was "not significantly limited" in the ability to remember locations and work-like procedures; to understand and remember very short and simple instructions; to carry out short and simple instructions; to maintain attention and concentration for extended periods; work with others without being distracted' and to make simple work-related decisions. *Id.* at 150. Further, Plaintiff was "not significantly limited" in her ability to complete a normal workday and workweek without interruptions from her psychologically-based symptoms. *Id.* at 151. Dr. Garcia believed Plaintiff was not significantly limited in any social interaction or adaptation categories. *Id.* Therefore, Dr. Garcia concluded Plaintiff was able to carry out and sustain simple, repetitive tasks. *Id.* at 152.

On April 17, 2006, Dr. Glenn Ikawa affirmed the assessment that Plaintiff was able to perform simple, repetitive tasks. AR at 170.

B. Hearing Testimony

With the assistance of an interpreter, Plaintiff testified at the hearing before the ALJ on July 2, 2007. AR at 47. Plaintiff testified that she did not know her birthday or the year she was born. *Id.* at 48. However, her attorney presented a California identification card that listed her birth date as February 27, 1966. *Id.* at 48-49. Plaintiff testified that she was married and five of her children lived with her but that she did not know how many children she had in total. *Id.* at 49. Likewise, Plaintiff stated she did not know her address, the name of the street where she lived, or her telephone number. *Id.* at 50. Further, Plaintiff said she did not know the year she moved to the United States, and said that she was unable to estimate how long she had been in the United States. *Id.* at 51.

Plaintiff said she had never been to school, either in the United States or in her home country, because she was sick. AR at 51-52. Plaintiff stated she did not speak English because she had "no chance of going to school." *Id.* at 52. She said she could not write because her hand "was not useful" and she could not "read at all." *Id.* Plaintiff said that because she cannot read, she does not know how the calendar works and is unable to tell what day or month it is. *Id.* at 56. The ALJ questioned Plaintiff regarding this assertion, because she was able to tell her doctor the last day and month she had her period. *Id.* Plaintiff responded that "the interpreter told them" and "[m]y husband knows that." *Id.*

According to Plaintiff, she never worked and had not tried to work. AR at 52. When asked if she felt that she was able to work, Plaintiff responded, "I cannot work. My arms is weak. I cannot work." *Id.* Plaintiff stated her right arm was injured before she came to the United States, and was "stiff." *Id.* at 57. Further, Plaintiff reported she had problems with her stomach and lower back, she had headaches that made her dizzy, and she suffered from depression. *Id.* at 53.

Plaintiff stated she felt anxious and wanted to kill herself "like every day" when she was left alone. AR at 54. She stated that she did not know what to do when everyone left: "I get depressed. I suffer anxiety. I don't know what to do. I don't know how to turn on the TV to watch. I don't know how to do many things." *Id.* Plaintiff testified that she saw a doctor on a regular basis to help her feel less anxious and nervous. *Id.* at 57-58. She did not know where the doctor was located but reported that her husband took her to the appointments. *Id.* at 58.

C.   The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff has not engaged in substantial gainful activity since her application date of April 18, 2005. AR at 21. Second, the ALJ found Plaintiff has a severe impairment of "a major depressive disorder." *Id.* This impairment did not meet or medically equal a listing. *Id.* at 22. Further, the ALJ determined Plaintiff had "moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation." *Id.*

1  To determine Plaintiff's residual functional capacity ("RFC"), the ALJ considered "the entire
2  record." AR at 22. The ALJ determined Plaintiff had the RFC "to perform a full range of work at
3  all exertional levels and has the ability to understand, remember and carry out simple and repetitive
4  work." *Id.* Plaintiff had no past relevant work to which she could return, and as such transferability
5  of job skills was not an issue. *Id.* at 23. In considering Plaintiff's "age, education, work experience,
6  and residual functional capacity," the ALJ determined jobs "exist in significant numbers in the
7  national economy that [Plaintiff] can perform." *Id.* at 24. Thus, the ALJ concluded Plaintiff was not
8  disabled from November 18, 2006, through the date of the decision. *Id.* at 25.

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ failed to reject the portions of Dr. Hirokawa's opinion in a proper manner. (Doc. 14 at 7-8). Specifically, Plaintiff states:

> The ALJ did not reject Dr. Hirokawa's opinions that Mai Chang has a "fair" ability to understand and remember very short and simple instructions; "poor" ability to understand and remember detailed instructions; "poor" ability to maintain concentration; "fair" ability to accept instructions from supervisors and respond appropriately; "fair" ability to accept instructions from supervisors and respond appropriately; "fair" ability to sustain an ordinary routine without special supervision; "fair" ability to interact with coworkers; and a "high" likelihood of deterioration.

*Id*. at 8. Plaintiff argues the ALJ failed to set forth either "clear and convincing" reasons or "specific and legitimate" reasons for rejecting these opinions. *Id.* On the other hand, Defendant argues that the ALJ discussed Dr. Hirokawa's findings and did not fully reject them. (Doc. 16 at 9). Defendant argues, "The ALJ interpreted the doctor's findings as being consistent with the ability to perform simple repetitive tasks and Plaintiff has failed to show that the ALJ's interpretation was unreasonable." *Id.*

A.  Meaning of the word "fair"

Plaintiff asserts the ALJ misinterpreted the report by Dr. Hirokawa because "'Fair' is a term of art" and "is one step above 'poor.'" (Doc. 14 at 8-9). According to Plaintiff, "The ALJ mis-summarized the content of the report and washed out the meanings of the terms from the psychologically based forum from which they arose." *Id.* at 9. Plaintiff cites to the State of

Wisconsin, Department of Children and Families[5], which defines "fair" as "seriously limited but not precluded." *Id.* Notably, even this definition of the word "fair," Plaintiff is *not precluded* from work.[6]

Though the Court agrees that the word "fair" is a term of art, its definition must be considered within the current context. In *Cantrell v. Apfel*, 231 F.3d 1104, 1107-1108 (8th Cir. 2000)[7], the court explained:

> The word "fair" is both a measure of ability and disability. It is on the balance between poor ability to function and greater ability to function. A physician's use of the term "fair" does not, on its own, declare that the claimant cannot return to past work. Rather, the term 'fair' requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability.

*Cantrell's* definition of "fair" has been adopted by the Sixth Circuit in *Colvin*, 475 F.3d at 731 and has been cited with favor by this District in *Esquivel v. Astrue,* 2010 U.S. Dist. LEXIS 12775 at *20-21 (E.D. Cal. Jan. 26, 2010). Here, the ALJ conducted a review of the entire record and determined that the record established Plaintiff was not disabled. Thus, because this was consistent with the obligation set forth in *Cantrell*, the ALJ did not err.

B.   ALJ's interpretation of the evidence

In this circuit, the opinions of three categories of physicians are distinguished: (1) treating physicians, (2) examining physicians, who examine but do not treat the claimant, and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d. 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ when determining the existence of an impairment or the ultimate issue of disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d at 751. However, Plaintiff was not under the care of a particular doctor and, as a result, no treating physician offered an opinion regarding her mental residual functional capacity. On the other

---

[5] Plaintiff does not explain why Wisconsin's Department of Family

[6] The Sixth Circuit has held, "The plain meaning of 'seriously limited but not precluded' is that one is not precluded from performing in that area. It defies logic to assert that a finding of 'not precluded' actually means that one is precluded." *Colvin v. Barnhart*, 475 F.3d 727, 731 (6th Cir. 2007).

[7] *Cantrell's* definition of "fair" has been adopted by the Sixth Circuit in *Colvin*, 475 F.3d at 731 and has been cited with favor by this District in *Esquivel v. Astrue,* 2010 U.S. Dist. LEXIS 12775 at *20-21 (E.D. Cal. Jan. 26, 2010) and

8

hand, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2). Thus, the opinion of the examining physician, Dr. Hirokawa, was entitled to greater weight than the opinions of non-examining physicians, including Dr. Garcia and Dr. Ikawa.

The ALJ gave "great weight" to Dr. Hirokawa's overall opinion but gave "very little weight" to his specific opinion "that the claimant would have poor ability to complete a normal workday/ workweek and deal with changes in a work setting."[8] AR at 24. To give less weight than afforded generally to a physician's opinion, an ALJ must set forth specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

Toward this end, the ALJ noted Plaintiff "has not received the type of medical treatment one would expect for a totally disabled individual." Likewise, the ALJ determined that Dr. Hirokawa appeared to base his conclusion that Plaintiff had a "poor" ability to complete a workday/workweek without interruption and deal with changes at work," on the her poor motivation and cultural differences." *Id.*; *see also* AR at 143. Given that the ALJ had found that Plaintiff's subjective complaints lacked credibility[9], and the ALJ determined that Dr. Hirokawa's opinion was founded upon Plaintiff's subjective statements, the ALJ's reasoning for discounting Dr. Hirokawa's opinion, constituted specific and legitimate reasons. *See, e.g.*, *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (an opinion "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints themselves have been properly discounted"); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (disregarding an opinion because it was premised on the claimant's subjective complaints, which the ALJ had already discounted).

---

[8] An ALJ may accept all, some or none of a physician's opinions. *Magallanes v. Bowen*, 881 F.2d 747, 753-754 (9th Cir. 1989).

[9] The ALJ found Plaintiff lacked credibility due to conflicting information regarding her activities of daily living, impairments, and past work. AR at 23. In addition, the ALJ noted Plaintiff "showed poor effort" at a consultative examination, and her alleged daily activities differed from those alleged by a third party lay witness. *Id.* These are proper considerations in a credibility determination. *See Thomas v. Barnhart*, 278 F.3d 947, 958, 602 (9th Cir. 2002) (An ALJ may consider "at least" the claimant's reputation for truthfulness, inconsistent statements, activities of daily living, and testimony from third parties). Plaintiff does not challenge the credibility determination.

Moreover, the ALJ observed that Dr. Hirokawa's opinions related to Plaintiff's abilities to maintain attention and concentration and to deal with interruption, seemingly, were at odds. For example, though Dr. Hirokawa opined that Plaintiff had a "poor ability to maintain attention and concentration," he found also that Plaintiff's conversational concentration was adequate and that she was able to sustain an ordinary routine. AR at 24. Dr. Hirokawa concluded likewise that Plaintiff "had the ability to understand and remember short and simple instructions [and] to accept instructions from supervisors and respond appropriately." *Id*. To determine Plaintiff's RFC, the ALJ harmonized this evidence. This was perfectly within the ALJ's province. An ALJ "is entitled to draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999); *see also Walker v. Astrue*, 2011 U.S. Dist. LEXIS 18590, at *23-24 (E.D. Cal. Feb. 10, 2011) (the ALJ's finding that the claimant could perform simple, repetitive work was "consistent with" the examining physician's opinion that the plaintiff "had a fair ability to understand and remember very short and simple instructions"). Thus, the ALJ did not err when he determined that Plaintiff had the RFC to "understand, remember and carry out simple and repetitive work." *Id.* at 22.

Further, the ALJ relied on the opinions of non-examining physicians Dr. Garcia and Dr. Ikawa, who concluded that Plaintiff retained the ability to perform simple, repetitive tasks. AR at 24. As discussed by the ALJ, "the State agency medical consultants concluded that [Plaintiff] had the ability to understand, remember and to carry out simple repetitive tasks, [and was] able to relate to others and able to adapt and respond appropriately to work situations." *Id.* Conclusions of the non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews*, 53 F.3d at1041; *Tonapetyan v. Halter*, 242 F.3d 1144, 1449 (9th Cir. 2001) (the opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record"). Here, the ALJ determined the opinions of Dr. Garcia and Dr. Ikawa, along with his interpretation of Dr. Hirokawa's opinions, and the respective weights he assigned to them, were "consistent with the medical evidence of record." AR at 24. Therefore, substantial evidence supported the mental RFC determined by the ALJ.

///

**CONCLUSION**

For all these reasons, the Court concludes the ALJ's evaluation of the opinion of Dr. Hirokawa, as an examining physician was proper. Though Plaintiff argues the evidence supports a finding that Plaintiff is disabled, the evidence demonstrated Plaintiff could perform simple, repetitive tasks. Therefore, the ALJ's determination must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

In addition, substantial evidence supported the residual functional capacity determined by the ALJ, because the conclusions of Dr. Garcia and Dr. Ikawa were consistent with the opinion of Dr. Hirokawa. Thus, the ALJ's conclusion that Plaintiff is not disabled must be upheld by the Court because the ALJ applied a proper standard and the findings are supported by substantial evidence. *Sanchez*, 812 F.2d at 510.

Accordingly, it is **HEREBY ORDERED**:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is **DENIED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Mai Chang.

IT IS SO ORDERED.

Dated:  **April 7, 2011**                              /s/ Jennifer L. Thurston
                                                              UNITED STATES MAGISTRATE JUDGE